**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**MICHAEL KELVIN UPSHAW**                                                          **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 2:20-cv-49-KS-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                     **DEFENDANT**

**REPORT AND RECOMMENDATION**

Plaintiff Michael Kelvin Upshaw, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying his claim for disability insurance benefits. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends that Defendant's Motion to Affirm Commissioner's Decision [19] be GRANTED, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED.

**PROCEDURAL HISTORY**

On June 20, 2017, Plaintiff applied for disability insurance benefits. (Administrative Record [13] at 187, 205). Plaintiff alleged that he had been disabled since March 17, 2016, due to neck pain, lower back pain, groin pain cause by hernia surgeries, limited range of motion in neck, depression, nervousness, and a bruised spinal cord. ([13] at 205). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") held a hearing on January 4, 2019. ([13] at 75-101). On June 20, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. ([13] at 17-28).

Plaintiff appealed the ALJ's decision, and on January 10, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the

1

Commissioner. ([13] at 5-8). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her June 20, 2019, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff worked after his alleged disability onset date—March 17, 2016—but found that his work activity did not rise to the level of substantial gainful activity. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative joint disease, degenerative disc disease, generalized anxiety disorder and depression disorder." At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([13] at 19-20).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "perform light work as defined in 20 CFR 404.1567(b)[3] except he can sit and stand alternatively every 30 minutes[,] . . . must have simple instructions only[,] and must have occasional contact with the public and co-workers." ([13] at 21).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([13] at 26).  At step five, however, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform.  Accordingly, the ALJ found that Plaintiff was not disabled. ([13] at 27-28).

## APPEALS COUNCIL'S DECISION

Plaintiff appealed the ALJ's decision to the Appeals Council.  In support of his appeal, Plaintiff submitted additional evidence.  Specifically, Plaintiff submitted a statement from his mother dated September 11, 2019, a function report completed by Plaintiff and dated March 3, 2018, and medical records from February 9, 2018, to March 29, 2019. ([13] at 10-11, 52-60, 62-74).  The Appeals Council found that the evidence did "not show a reasonable probability that it would change the outcome of the decision" and denied Plaintiff's request for review. ([13] at 5-8).

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

In his *pro se* brief, Plaintiff sets forth multiple complaints concerning the disability determination. Plaintiff's complaints raise the following issues for review:

1. Whether the ALJ erred by denying Plaintiff assistance from his mother during the hearing.

2. Whether the Social Security Administration and the ALJ were biased against Plaintiff.

3. Whether the ALJ erred by failing to acquire and consider additional medical records.

4. Whether the ALJ erred by considering Petitioner to be a person under fifty years of age.

5. Whether the ALJ properly considered testimony from a vocational expert.

*Issue 1: Whether the ALJ erred by denying Plaintiff assistance from his mother during the hearing*

Plaintiff asserts that the ALJ refused to allow Plaintiff's mother to attend and assist Plaintiff during the hearing. Social Security regulations provide:

> You may appoint any person who is not an attorney to be your representative in dealing with us if the person—
>
> (1) Is capable of giving valuable help to you in connection with your claim;
>
> (2) Is not disqualified or suspended from action as a representative in dealings with us;
>
> (3) Is not prohibited by any law from acting as a representative; and
>
> (4) Is generally known to have a good character and reputation. Persons lacking good character and reputation, include, but are not limited to, persons who have a final conviction of a felony (as defined by § 404.1506(c)) or any crime involving moral turpitude, dishonesty, false statements, misrepresentation, deceit, or theft.

20 C.F.R. § 404.1705(b).

Although Plaintiff may have been entitled to have a representative at his hearing, the record does not support Plaintiff's assertion that the ALJ refused to allow the attendance of a representative. Plaintiff was informed multiple times prior to the hearing that a representative could assist him. ([13] at 162, 171). During the hearing, the following exchange between Plaintiff and the ALJ occurred:

5

> <u>ALJ</u>: I see that today you are not represented by an attorney or non-attorney representative. Were you aware that such a representative could assist you by obtaining medical records and also by presenting your case in a light most favorable to you. Do you feel comfortable going forward without such representation?
>
> <u>Plaintiff</u>: Yes, ma'am.

([13] at 79). Additionally, on the date of the hearing, Plaintiff signed a "Waiver of Right to Representation" stating that he wished to proceed without a representative. ([13] at 183).

A claimant may waive his right to representation if given sufficient information to decide intelligently whether to retain counsel or proceed *pro se*. *Norden v. Barnhart*, 77 Fed. Appx. 221, 223 (5th Cir. 2003). The record establishes that Plaintiff waived his right to a representative at the hearing.

Moreover, even if Plaintiff did not validly waive his right to representation, he has failed to show that he "was prejudiced due to the absence of counsel at the hearing." *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). To establish prejudice, Plaintiff must show that a representative "could have and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Plaintiff has failed to show how his mother's presence as a representative would have altered the outcome of the Commissioner's decision.

***Issue 2: Whether the Social Security Administration and the ALJ were biased against Plaintiff***

Plaintiff claims that the Social Security Administration and the ALJ were biased against him. Plaintiff cites to several instances which he claims demonstrate this bias against him. Plaintiff complains that an official with SSA asked him if he attended church. ([17] at 2). Plaintiff complains that the ALJ asked him how he paid for his medications and asked if he had children, consumed alcohol, and used tobacco. ([21] at 2-3). Plaintiff also complains that the ALJ repeatedly interrupted him during the hearing and spoke in a "tone that wasn't the tone of an impartial judge." ([17] at 14).

The record, including the questions and "tone" cited by Plaintiff, does not demonstrate bias or improper decision making. "Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge unless they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible" *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). The record does not reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible."[4] Thus, the Commission's decision will not be overturned on the basis of bias.

***Issue 3: Whether the ALJ erred by failing to acquire and consider additional medical records***

During the hearing, Plaintiff informed the ALJ that additional medical records needed to be considered. ([13] at 80). Plaintiff argues that the ALJ erred by failing to acquire and consider the additional medical records before issuing her decision.

An ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Courts, however, should not reverse the decision of an ALJ for failure to develop the record unless the claimant shows that he was prejudiced by such failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Id*. (internal quotations and citation omitted). As previously mentioned, Plaintiff submitted additional medical records to the Appeals Council, but it found that these records did "not show a reasonable probability that it would change the outcome of the decision" and denied Plaintiff's request for review. ([13] at 5-8).

---

[4] It should also be noted that questions about a claimant's activities, habits, and daily routines are relevant to assess the claimant's RFC.

Similar to a court's review of whether an ALJ failed to properly develop the record, a court's review of the Appeals Council's treatment of new evidence must include a consideration of the effect new evidence would have had on the ALJ's decision. If new evidence is presented to the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are supported by substantial evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005); *see also Jones v. Astrue*, 228 Fed. App'x 403, 406-07 (5th Cir. 2007) (cautioning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard). A court should remand based on new evidence only if the new evidence is so inconsistent with the ALJ's finding that it undermines the ultimate disability determination. *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 281-82 (5th Cir. 2006).

The record before the ALJ included medical records from Advanced Pain Therapy, PLLC, concerning treatment from January 22, 2014 to February 9, 2018. Concerning the latest of these records, the ALJ stated:

> A progress report from Advanced pain Therapy shows the claimant presented in February 2018 with stable low back pain. Treatment notes show that he was using Percocet. He asked to continue the medication, which significantly reduced his overall pain level and allowed him to maintain the highest level of function possible. On physical examination, he appeared in no apparent distress, with appropriate mood and affect. While examination showed a right-sided lumbar flexed antalgic gait, there was negative straight leg raise and negative Spurling's testing. There was no focal upper of lower extremity strength deficits and no decreased sensation to light touch in the bilateral upper or lower extremities.

[13] at 24.

Plaintiff submitted additional medical records from Advanced Pain Therapy to the Appeals Council. These records concern treatment provided on May 4, 2018; July 27, 2018;

January 11, 2019; and March 29, 2019. ([13] at 64-71).[5]  Like the records examined by the ALJ, the new records show no apparent distress, a lumbar antalgic gait, negative straight leg raises, and no focal extremity strength deficits. ([13] at 64, 66, 68, 70).  Thus, the new evidence is cumulative of evidence already considered by the ALJ.  The record before the ALJ contained sufficient evidence for the ALJ to make a determination, and Plaintiff has not demonstrated that the ALJ's failure to obtain additional medical records has prejudiced any substantial right. *See Moore v. Astrue*, 2009 WL 5386134, at *3 (N.D. Tex. Nov. 13, 2009).

Additionally, the record as a whole demonstrate that the Commissioner's decision is support by substantial evidence.  The ALJ noted that "abnormalities are present" and accounted for them in Plaintiff's RFC.  The ALJ, however, found that the evidence did "not support the level of severity of limitations alleged."  The ALJ considered medical records showing a normal range of motion, normal gait, normal strength, a lack of distress, and improvement in symptoms. ([13] at 25, 319-20, 407, 439).  The ALJ considered the opinions of state agency consultants that were consistent with the ALJ's RFC findings. ([13] at 25).  Additionally, the ALJ noted that Plaintiff "engaged in a somewhat normal level of daily activity and interaction," such as "managing his personal care needs, preparing light meals, performing light household chores, driving, shopping in stores, and spending time with family." ([13] at 25).

***Issue 4: Whether the ALJ erred by considering Petitioner to be a person under fifty years of age***

Plaintiff argues that the ALJ failed to properly consider his age.  At step five of the sequential analysis, an ALJ considers a claimant's age, education, work experience, and RFC to

---

[5] Plaintiff also provided records to the Appeals Council which were part of the record before the ALJ, including the February 9, 2018, treatment record from Advanced Pain Therapy and records concerning MRIs taken for Plaintiff's spine on February 2, 2016 and May 9, 2014. ([13] at 62-63, 482-83, 72-73, 388-89).

determine whether a claimant is capable of performing jobs that exist in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1569a.  The Social Security regulations place claimants into one of three age categories: (1) a younger person (18-49); (2) a person closely approaching advanced age (50-54); or (3) a person of advanced age (55 or older). *See* 20 C.F.R. § 404.1563.  A "borderline situation" is presented where the claimant is "within a few days to a few months of reaching an older age category and using the older age category would result in a determination or decision that [the claimant is] disabled . . . ." *See* 20 C.F.R. § 404.1563(b).  In a borderline situation, an ALJ may not apply the age categories "mechanically" but must "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case. *Id*.

In her decision, the ALJ stated: "The claimant was born on November 8, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)."  Plaintiff argues that the ALJ erred by considering him to be a younger person, noting that he was fifty-one years old by the time of the hearing.

The record, however, does not demonstrate that the ALJ applied the age categories mechanically.  The ALJ relied on the testimony of a vocational expert ("VE").  During the hearing, the ALJ did not instruct the VE to consider Plaintiff as a younger person.  Instead, the ALJ confirmed that Plaintiff was born on November 8, 1967, and asked the VE to "consider an individual of the same age, educational background and work history as the claimant." ([13] at 81, 98).  Thus, the record shows that the ALJ evaluated the overall impact of all the facts of Plaintiff's case and did not apply age categories mechanically. *See Luke v. Saul*, 2019 WL 7563200, at *5 (S.D. Miss. Dec. 13, 2019); *Benton v. Colvin*, 2015 WL 5024521, at *6 (W.D.

La. Aug. 24, 2015); *Stanridge-Salazar v. Massanari*, 2001 WL 502506, at *1 (5th Cir. Apr. 24, 2001).

The undersigned also notes that the Medical Vocational Guidelines[6] direct a finding of "not disabled" for either a "younger person" or a "person closely approaching advanced age" with the same education, work experience, and RFC as Plaintiff. *See* 20 C.F.R. Part 404, Subpart P, App. 2.[7] The ALJ's analysis at step five does not require reversal of the Commissioner's decision or remand of this action.

*Issue 5: Whether the ALJ properly considered testimony from a vocational expert*

Finally, Plaintiff takes issue with the ALJ's reliance on the testimony of a VE. At the hearing, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The VE testified that there were such jobs, including routing clerk, office helper, and mail clerk. ([13] at 99). Plaintiff argues that the ALJ should not have relied on the VE's testimony because she testified via telephone and, thus, was unable to see Plaintiff and assess his capabilities.

Plaintiff's misapprehends the purpose of the VE's testimony. The VE made no assessment of Plaintiff's capabilities. The ALJ determined Plaintiff's RFC and reported the RFC to the VE, who offered testimony concerning the existence of jobs in the national economy. *See Biestek v. Berryhill*, 139 S.Ct. 1148. 1152 (2019). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions

---

[6] *See* 20 C.F.R. Part 404, Subpart P, App. 2., Table 2.

[7] When an ALJ finds that a claimant is capable of performing the full range of a category of work, such as light work, the ALJ may rely on the Guidelines instead of conducting an individualized determination with evidence from a VE. Because the ALJ determined that Plaintiff had limitations that restricted his RFC to less than the full range of light work, testimony from a VE was required. *See Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986).

11

and the attributes and skills needed" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). Thus, Plaintiff has not identified any error made by the ALJ in relying on the VE's testimony.

Plaintiff also argues that the ALJ ignored certain testimony from the VE which supported his disability claim. As mentioned, the ALJ's asked VE was whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The ALJ, however, presented a second hypothetical question to the VE by asking if jobs existed for an individual with "the additional limitation that this individual must be allowed to take frequent, unscheduled breaks." The VE responded that the added limitation "would most likely preclude competitive employment . . . ." ([13] at 99). Plaintiff argues that the ALJ should have found him disabled based on this testimony.

The ALJ, however, did not include the additional limitation of "must be allowed to take frequent, unscheduled breaks" in Plaintiff's RFC. As previously mentioned, the ALJ determined that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except he can sit and stand alternatively every 30 minutes[,] . . . must have simple instructions only[,] and must have occasional contact with the public and co-workers." ([13] at 21). Thus, the assumptions posed to the VE in the second hypothetical did not coincide with Plaintiff's RFC, and the VE's response to the second hypothetical was immaterial. *See Owens v. Heckler*, 770 F.2d 1276, 1283 (5th Cir. 1985). The ALJ's treatment of the VE's testimony does not require reversal of the Commissioner's decision or remand of this action.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that Defendant's Motion to Affirm Commissioner's

Decision [19] be GRANTED; the Commissioner's final decision be AFFIRMED; and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 21st day of December, 2020.

                 s/ Michael T. Parker
                 United States Magistrate Judge